# EXHIBIT C



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:CRH/JMH

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 28, 2020

By ECF

The Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Zhu Yong
            Docket No. 20-MJ-1025 (PK)

Dear Judge Kuo:

      Later today, the defendant Zhu Yong, also known as "Jason Zhu" (hereafter "defendant" or "Zhu") is scheduled to be arraigned before Your Honor in the above-referenced matter. The government respectfully submits that the Court should enter a permanent order of detention because the defendant presents a serious risk of flight.

      As set forth in more detail below, the defendant conspired to coerce a United States resident to return to the People's Republic of China (the "PRC"), and he did so at the direction and control of PRC officials. In addition to his demonstrated ties to government officials of a foreign power, the defendant has familial ties to the PRC, has frequently traveled to the PRC for extended trips, and resided in the PRC for nearly two months as recently as January 2020. Accordingly, there is a substantial risk that the defendant, a PRC citizen, would flee the United States and return to the PRC, or seek refuge at the New York-based PRC Consulate, which is inviolable under applicable international law. See United States v. Angwang, No. 20-CR-442 (EK), 2020 WL 5947187 (E.D.N.Y. Oct. 7, 2020) (ordering detention of defendant charged with acting as agent of PRC government and other crimes due to flight risk).[1]

---

[1]     Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

I.   Background

   A.   Summary of Criminal Scheme

   The defendant is charged in a complaint with conspiring to act as an agent of the government of the People's Republic of China ("PRC") without prior notification to the Attorney General, in violation of Title 18, United States Code, Sections 371 and 951.

   As detailed in the complaint, the defendant, together with several other coconspirators, including several PRC officials, participated in an international campaign to threaten, harass, surveil and intimidate "John Doe-1" and his family, in order to force them to return to the PRC as part of an international effort by the PRC government known as "Operation Fox Hunt" and "Operation Skynet." In furtherance of this operation, the PRC government targets Chinese individuals living in foreign countries that the PRC government alleges have committed crimes under PRC law, and seeks to repatriate them to the PRC to face charges. Rather than rely upon proper forms of international law enforcement cooperation, the defendant assisted certain PRC officials with clandestine, unsanctioned and illegal conduct within the United States.

   Specifically, Zhu, the other charged defendants, and several other conspirators including PRC officials, are alleged to have engaged in the following acts in a campaign to coerce John Doe-1 to return to the PRC:

- Between approximately September 2016 and April 2017, several of the defendants, including Zhu and PRC officials who traveled to the United States, participated in a scheme to bring John Doe-1's elderly father from the PRC to the United States against the father's will and to use the father's unannounced presence to threaten John Doe-1 and force his return to the PRC. The highly-sophisticated operation, which was supervised and directed by several PRC officials, involved a panoply of actors (including the defendant), who were responsible for logistics and coordination when the PRC officials traveled to the U.S. and executed the scheme; the use of private investigators to gather intelligence about and locate John Doe-1 and his family; and surveillance activities, including with night vision goggles brought by one of the PRC officials. After their efforts failed, several of the defendants took efforts to conceal their conduct, directing other defendants to "delete all of our chat[s]" and to make false claims to U.S. law enforcement if interviewed.

- Between approximately May 2017 and July 2017, several conspirators attempted to hire a private investigator to locate John Doe-1's daughter, in order to photograph and video record the daughter as part of a campaign to exert pressure on John Doe-1. Later, between April and July 2018, another co-conspirator sent harassing messages over social media to John Doe-1's daughter and her relatives and friends related to the PRC's interest in repatriating John Doe-1.

- In September 2018, two conspirators came unannounced to John Doe-1's residence, knocked aggressively on his door, tried to open the door, and searched around the outside of the home. They attached a note to the door, and left several other notes

2

around the residence, which all instructed John Doe-1 to return to the PRC to avoid any harm to his family.

- Between February 2019 and April 2019, several letters and a video were sent from the PRC to John Doe-1 and his family with messages intended to coerce their return to the PRC.

B. The Defendant's Participation in the Scheme

Zhu is a 64-year-old PRC citizen and a U.S. lawful permanent resident ("LPR"). Zhu travels frequently between the PRC and the United States, and stays in the PRC for extended periods of time. For example, based on travel records it appears the defendant was in the PRC from November 2019 through January 2020, and before that from April 25, 2019 through June 14, 2019.

Zhu played a critical role in the April 2017 scheme to use John Doe-1's elderly father to relay threats that the conspirators hoped would compel John Doe-1 to return to the PRC. Beginning around September 2016, Zhu was entrusted on behalf of the PRC officials directing to operation with hiring a private investigator (co-defendant Michael McMahon), who subsequently surveilled and gathered information about the victim and his family. Zhu attempted to hide his role in the hiring process by using an intermediary to hire McMahon. Zhu paid for the private investigator's services, passed personally identifying information about the victims to the investigator, and directed the private investigator to try to locate the victims, again using the intermediary for these communications so that he could stay in the shadows. Zhu received reports from the private investigator which, based on the later actions of his coconspirators, Zhu appears to have shared with his coconspirators so that they could carry out the plan to threaten the victim in April 2017. Eventually, Zhu contacted the private investigator himself, and facilitated a direct meeting between the private investigator and one of the PRC officials directing the operation. On or about October 27, 2016, Zhu met with the private investigator in person, along with co-defendant Hu Ji, a person who purports to be a PRC police officer and who, as demonstrated in the complaint, was one of the primary people responsible for the campaign against John Doe-1 and his family. After this meeting, the evidence indicates Zhu handed off the private investigator to defendants Hu Ji and Zhu Feng, who continued to use the investigators' services for the criminal scheme.

II. Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

3

In addition, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, these factors weigh heavily against pretrial release.

III.     The Court Should Enter a Permanent Order of Detention

The factors to be considered in the detention analysis show that the defendant presents a substantial risk of flight if released on bond. Accordingly, the Court should enter a permanent order of detention pending trial.

The charged offenses are extremely serious. The defendant is charged with acting as an illegal agent of a foreign power, and acted for the benefit of the PRC in all the ways set forth above. As Judge Komittee recently explained, this crime is "serious by any measure." Angwang, 2020 WL 5947187 at *2. Because the defendant is charged with conspiring to commit this conduct under Title 18, United States Code, Section 371, he faces a maximum sentence of five years' imprisonment. Notably, while there is no guideline under the United States Sentencing Guidelines applicable to the underlying offense that Zhu conspired to carry out, the range of sentences that have been ordered in a cross-section of Section 951 cases indicates that the defendant faces a realistic prospect of a multi-year sentence. See id. (reviewing sentences in Section 951 cases and noting that they "are all of meaningful duration"). The prospect of a significant term of incarceration confirms the defendant's status as a serious risk of flight. Indeed, there is every reason to think that he will make efforts to flee from the United States so that he can avoid the prospect of a lengthy prison term. The evidence against the defendant is substantial, and includes, electronic communication between the defendant and the intermediary to the private investigator, photographs of his meeting with the private investigator and PRC police officer and co-defendant Hu Ji, and telephone records reflecting his communications with other co-conspirators. Accordingly, the seriousness of the offense and the weight of the evidence support a finding that the defendant is a flight risk.

The defendant's history and characteristics also confirm that he presents a substantial risk of flight. The defendant was born in the PRC and retains familial ties to that country. The defendant has also frequently traveled to the PRC, and stayed for multiple months at time. Moreover, since he faces a significant sentence, the defendant has every incentive to flee. Were the defendant to flee the United States, the United States would have limited ability to recapture or extradite him. Notably, the United States does not have an extradition treaty with the PRC. Moreover, the United States would not be able to recapture the defendant were he to enter the PRC Mission to the United Nations or the PRC Consulate—both of which are located in Manhattan—during his pretrial release.

For all of these reasons, the government respectfully submits that the defendant represents a serious risk of flight if released on bond, and should be detained pending trial.

IV.     Conclusion

        For all of the foregoing reasons, the defendant should be detained pending trial. The defendant is charged with extremely serious offenses, which carry a serious sentence. The government respectfully submits that no condition or combination of conditions will assure the defendant's return to court, or his compliance with the Court's directives, and the Court should thus enter a permanent order of detention pending trial.

                                         Respectfully submitted,

                                         SETH D. DuCHARME
                                         Acting United States Attorney

                        By:    /s/ Craig R. Heeren
                                       Craig R. Heeren
                                       Assistant U.S. Attorney
                                       (718) 254-7000

cc:     Clerk of Court (PK) (by ECF)
         Defense Counsel (by email)